**ABIR COHEN TREYZON SALO, LLP**
Boris Treyzon, Esq. (SBN 88893)
Douglas A. Rochen, Esq. (SBN 2172331)
1901 Avenue of the Stars, Suite 935
Los Angeles, California 90067
T: (310) 407-7888
F: (310) 407-7915

**OWDOM LAW FIRM**
Matthew D. Owdom (SBN 258779)
632 W. Oak Ave.
Visalia, California 93291
T: (559) 750-5224

Attorneys for Plaintiff Ramiro Huerta

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMIRO HUERTA,<br><br>  Plaintiff,<br><br>vs.<br><br>COUNTY OF TULARE, a governmental entity; TULARE COUNTY SHERIFF, a governmental entity; MICHAEL COLDREN; LAURA TORRES-SALCIDO; HECTOR HERNANDEZ; SALVADOR CEJA; JAMES DILLON; RONALD SMITH; Unknown TULARE COUNTY TSC'S DEPUTIES named herein as Does 7 - 50; and ROES 1-50 inclusive<br><br>  Defendants | Case No.: 1:17-cv-01446-DAD-EPG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR TEMPORARY STAY OF CIVIL DISCOVERY PENDING DISPOSITION OF CRIMINAL CASE; DECLARATION OF DOUGLAS A. ROCHEN**<br><br>DATE: July 27, 2018<br>TIME: 9:30 a.m.<br>Dept.: 10<br><br>Magistrate Judge Erica P. Grosjean |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION

Plaintiff Ramiro Huerta ("Plaintiff") hereby submits the following memorandum of points and authorities and Declaration of Douglas Rochen in opposition to Defendants County of Tulare, Tulare County Sheriff, Michael Coldren, Laura Torres-Salcido, Hector Hernandez, Salvador Ceja, James Dillon and Ronald Smith's ("Defendants") Motion for Protective Order and for Temporary Stay of Civil Discovery Pending Disposition of Criminal Case.

## I. SUMMARY OF ARGUMENT

During the course of the conference call with the Court and counsel, Plaintiff agreed that, with the exception of initial disclosures, any documents or evidence produced in the civil case *that was not independently produced in the criminal case* could not be used in the criminal case. Thus, there is no dispute with respect to the parameters of a protective order already agreed to by Plaintiff. To the extent that Defendants seek a protective order beyond these parameters, the motion fails to comply with Local Rule 141.d.

Given the agreed upon protective order, there is no basis to issue a discovery stay pending completion of the criminal trial. Such a stay would virtually guarantee unwarranted delays in the civil proceeding and prejudice the interests of plaintiff in proceeding expeditiously with the civil litigation. With respect to Defendants' argument that a stay should be issued to protect Plaintiff's interests, this is a non-issue and a red herring. Plaintiff has agreed that he does not intend to assert his Fifth Amendment rights and consequently there is no basis for a stay on that ground. Moreover, it is facially inappropriate for Defendants to seek a stay based upon Plaintiff's Fifth Amendment rights.

Finally, any of the issues raised by overlap of discovery in the criminal and civil case are addressed by the protective order and, even assuming conviction on resisting arrest or making unlawful 911 call, Plaintiff's civil case will proceed on excessive force and other allegations. *Smithart v. Towery* (1996) 79 F.3d 951.

Consequently, there is no basis to stay discovery and prejudice Plaintiff's ability to prepare his civil case by the issuance of a discovery stay.

## II. SUMMARY OF RELEVANT PROCEDURAL HISTORY

- On April 25, 2017 the underlying incident which forms the basis of the criminal and civil complaints ("underlying incident") occurred.
- On October 25, 2017 Plaintiff field his original complaint alleging assault, battery, false imprisonment, violation of civil rights 42 U.S.C. § 1983; and intentional infliction of emotional distress arising out of the underlying incident.
- On November 15, 2017, less than a month after Plaintiff's original complaint was filed and *approximately 7 months after the underlying incident*, the Deputy District Attorney filed a criminal misdemeanor complaint Court No. PCM 358718 alleging resisting arrest and making unlawful 911 calls. [Defendant's Request for Judicial Notice Exhibit 1].
- On or about February 4, 2018 Plaintiff filed a First Amended Complaint for Assault, Battery, False Imprisonment, Violation of Civil Rights 42 U.S.C. § 1983 and Intentional Infliction of Emotional Distress.
- On or about April 19, 2018 Plaintiff filed a Second Amended Complaint ("SAC") for assault, battery, false imprisonment, intentional infliction of emotional distress, Violation of Civil Rights 42 U.S.C. § 1983, Violation of Civil Rights (Monell), Violation of Civil Code §52.1, Violation of Unruh Act, Negligent Hiring and Supervision, Negligent Training, Violation of First Amendment and Negligent infliction of Emotional Distress. The SAC alleged in part that after the officers were refused entrance in Plaintiff's home following a 911 call to report suspicious activities, that they engaged in a ruse by pretending to leave the home and thereafter tackled Plaintiff while he attempted to lock the family's front gate. [SAC 5:1-21] The operative complaint further alleged in part, "Plaintiff was dragged into the living room of his residence and repeatedly punched and kicked in the face by numerous officers with heavy boots. In

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION

addition, he was struck repeatedly with batons. Plaintiff was then handcuffed and dragged into the front yard of his residence, where he was pepper sprayed, again while in handcuffs. Plaintiff was then lifted up and taken to the back of a police cruiser where he was again repeatedly punched and beaten in the face. Plaintiff suffered a broken nose, fractured eye orbital, severe concussion and black eyes. Plaintiff suffered heavy bruising over the rest of his body. During the beating, Plaintiff's shoulder suffered damage. Moreover, Plaintiff suffered permanent damage to his vision, with one eye clouded by what Plaintiff describes as a white "sheet" over a substantial portion of his field of vision. After the beating, Plaintiff was detained and taken to the Emergency Room in Porterville. The TSC's deputies did not allow medical personnel to perform any comprehensive medical examinations; rather, Plaintiff's blood pressure was checked, in addition to his temperature, despite Plaintiff's assertions that he needed medical care. While at the hospital, after medical staff left his room, one TSC's deputy, a female, approached Plaintiff and asked whether Plaintiff "was a bottom or a top." Plaintiff is homosexual. From the ER, Plaintiff was taken to a TSC's detention facility where he was imprisoned for a period of approximately 8-10 hours. He was released on or about the morning of April 26, 2017. Plaintiff did not have his phone or wallet and was forced to walk home upon his release despite being severely beaten and suffering from head trauma. When Plaintiff returned home, he immediately was taken to the hospital by his elderly parents, where he was diagnosed with the traumatic injuries set forth above." [SAC 5:22-6:20]

## III. PLAINTIFF AGREES TO A PROTECTIVE ORDER PRECLUDING THE INTRODUCTION OF EVIDENCE PRODUCED IN THE CIVIL ACTION IN THE CRIMINAL ACTION EXCEPT AS TO EVIDENCE INDEPENDENTLY PRODUCED IN THE CRIMINAL ACTION

During the June 14, 2018 telephonic conference with court and counsel, Plaintiff's counsel advised Defendants that, with the exception of the initial

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION

disclosures, Plaintiff stipulated to a protective order that would preclude the introduction of evidence that had been produced in the civil proceeding, into the criminal proceeding unless that evidence had been independently produced in the criminal proceeding.[1] At that time Plaintiff acknowledged that in the criminal proceeding, Plaintiff would need to bring a Pitchess motion. Thus, Defendants' motion is unnecessary and moot as to the issuance of a protective order.

Moreover, to the extent that Defendants seek a protective order any other respect, the moving papers fail to satisfy the requirements of Local Rule 141.1(d) and thus any request other than that set forth in the notice to the motion should be denied.

## IV. THIS COURT SHOULD USE ITS DISCRETION TO DENY DEFENDANTS' PROPOSED DISCOVERY STAY REQUEST BECAUSE, AFTER CONSIDERATION OF THE RELEVANT FACTORS, A STAY WOULD NOT BE IN THE INTEREST OF JUSTICE

### A. Introduction

Seven months after the underlying incident and weeks after Plaintiff filed his civil complaint, the District Attorney filed criminal charges against Plaintiff for resisting arrest and improper 911 calls. Thus, the factual background for the issues raised by Defendants' stay request were created by a significantly delayed criminal action.

*Keating v. Office of Thrift Supervision* (1995) 45 F. 3d 322 acknowledged the Court's discretion to stay a civil action in favor of parallel criminal proceedings *if the stay is in the interest of justice*. The Court in *Keating* listed the factors to be considered by the court as: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; ... (5) the interest of the public in the

---

[1] (Declaration of Rochen p. 14 lines 9-12)

pending civil and criminal litigation;" and (6) the defendant's Fifth Amendment rights." *Keating v. Office of Thrift Supervision* (1995) 45 F. 3d 322, 324-25. See also *S.E.C. v. Nicholas* (2008) 569 F. Supp. 2d 1065, 1069.

As discussed herein, this Court should find that Defendants' request for a discovery stay are not warranted by the factors set forth in the *Keating* decision.

### B. The Interests of Plaintiff in Proceeding Expeditiously with the Civil Litigation Would Not be Served by a Discovery Stay

The issuance of a discovery stay until after the December 2018 criminal trial would result in extreme prejudice to Plaintiff's ability to prepare his civil action for trial. Here, this Court has set expert disclosure for February 1, 2019 and expert discovery cut-off for April 1, 2019. The requested stay would effectively require Plaintiff to conduct all discovery, inclusive of depositions, for Plaintiff's expert's review within a one month period assuming a December 2018 criminal trial. [2]

Moreover, if for whatever reason the December trial did not go forward on its current date, Plaintiff would be further and prejudiced by additional and unwarranted delays. On these facts, there is no justification for the issuance of a discovery stay.

### C. Defendant in the Criminal Action Will Not be Burdened by Permitting Discovery to Proceed

Consideration of a defendant's burden under the *Keating* factors applies to a criminal defendants' burden vs. a plaintiff's interest in litigating the civil case. As discussed herein, a stay order is unnecessary to protect the interests of the criminal defendants and would be contrary to the interests of the civil plaintiff. A stay of a civil case is an extraordinary remedy. *Hicks v. City of New York* (2003) 268 F. Supp. 2d 238, 241. In general, "absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim. *Paine, Webber, Jackson & Curtis, Inc.* (1980) 486 F. Supp. 1118,1119.

---

[2] (Declaration of Rochen p. 15 lines 2-8)

The moving papers argue that discovery should be stayed because of Plaintiff's possible conviction under *Penal Code* Section 148(a)(1).³ It is well settled that a resisting arrest conviction does not preclude an excessive force claim. As clarified by *Smithart v. Towery* (1996) 79 F.3d 951, that *Heck v. Humphrey* [ (1994) 512 U.S. 477] does not bar an excessive force action, "In *Heck,* the Court expressly held that where plaintiff's action "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." ... Because a successful section 1983 action for excessive force would not necessarily imply the invalidity of Smithart's arrest or conviction, *Heck* does not preclude Smithart's excessive force claim. ..." (p. 952-953)

See also *Yount v. City of Sacramento* ( 2008) 43 Cal. 4th 885 where the California Supreme Court held that arrestee's actions of kicking, spitting, and refusing to cooperate with officers while on the ground with restraints on his wrists and ankles did not establish a justification for any use of deadly force against arrestee by officer who accidentally shot arrestee while attempting to restrain him and did not bar an excessive force claim to the extent it alleged that the use of deadly force was unjustified.

In the case at bar, Defendants have overstated the import of any criminal conviction on the civil litigation. Here, the SAC alleges that Defendants assaulted him after they engaged in a ruse to leave his home.⁴ Regardless of whether Plaintiff is convicted of resisting arrest, the law is clear that Plaintiff may still proceed on an excessive force claim as discussed in *Smithart* and *Yount*. Moreover, any such conviction would not address Defendants' actions following the incident in failing

---

³ Penal Code Section 148(a)(1) provides in pertinent part, "(a)(1) Every person who willfully resists, delays, or obstructs any public officer, peace officer....to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

⁴ Defendants admit that they engaged in a ruse after they were refused entry into Plaintiff's home in order to take Plaintiff into custody.[ Declaration of Amy Meyers; Exhibit "A" DEF 000003-000004]

- 6 -
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION

to provide needed medical examinations and, following his release, forcing Plaintiff to walk home upon his release despite being severely beaten and suffering from head trauma.

The moving papers also argue that, "if Mr. Huerta is found guilty of the crime of Penal Code section 653x[5], the jury will have determined that Mr. Huerta's actions were unreasonable under the circumstances. (CA. Pen. Code §653x(b).) Most certainly this finding would impact, if not eliminate, additional theories in Mr. Huerta's civil rights matter." (Moving Papers 10:12-15) Defendants do not elaborate as to how a misdemeanor conviction for making 911 calls would impact the allegations in the SAC. In any event, these arguments do not justify a discovery stay ***especially where, as here, the parties have agreed that any evidence produced in the civil action would be inadmissible in the criminal action.***

### D. A Stay of the Discovery Would Not Serve the Court in the Efficient Use of the Judicial Resources

Defendants fail to articulate how the proposed stay would result in effective use of judicial resources since regardless of a stay, the criminal and civil matters will proceed separately. Moreover, a discovery stay until the completion of the criminal trial would essentially guarantee continuance of deadlines set by this court in the civil matter which would not be an efficient use of the judicial resources.

### E. The Interests of the Public in the Pending Criminal Litigation Would not be Served by a Discovery Stay

The moving papers fail to articulate exactly how the interests of the public would be served by barring Plaintiff from preparing his civil case for trial. To the contrary,

---

[5] Penal Code Section 653x provides, "(a) Any person who telephones the 911 emergency line with the intent to annoy or harass another person is guilty of a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), by imprisonment in a county jail for not more than six months, or by both the fine and imprisonment. Nothing in this section shall apply to telephone calls made in good faith. (b) An intent to annoy or harass is established by proof of repeated calls over a period of time, however short, that are unreasonable under the circumstances.(c) Upon conviction of a violation of this section, a person also shall be liable for all reasonable costs incurred by any unnecessary emergency response.

- 7 -
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION

the criminal litigation will not be impacted by discovery in the civil case where, as here, a protective order will issue precluding the introduction of evidence obtained in the civil litigation in the criminal case.

**F. Plaintiff's Fifth Amendment Rights Do Not Afford a Basis for a Discovery Stay on the Facts of this Case**

In somewhat of a disconnect, **Defendants** argue that **Plaintiff's Fifth Amendment** rights would be served by a stay precluding Plaintiff from serving discovery in the preparing of Plaintiff's civil rights case. However, Plaintiff has advised the Court that he does not intend to assert his Fifth Amendment rights in the civil proceeding. As such, there is no basis for Defendants to attempt to justify their request for a discovery stay on this basis. Moreover, this is an argument more appropriately made by a criminal defendant, not, as here, Defendants in the civil case.

Further, even assuming such arguments are appropriately made by defendants, they are not compelling. In *Keating v. Office of Thrift Supervision* (1995) 45 F. 3d 322, the Office of Thrift Supervision filed administrative charges against defendant Charles Keating ("Keating") while he was being criminally charged relating to related misconduct. Keating sought a stay of the administrative matter until after the resolution of the criminal trial, arguing that the pending trials forced him to assert his Fifth Amendment privilege in the administrative proceeding and claiming that there was significant overlap between the administrative and the criminal proceeding. On appeal, the Ninth Circuit rejected Keating contentions stating, " A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION

Fifth Amendment in a civil proceeding. *Baxter v. Palmigiano* (1976) 425 U.S. 308, 318..." (p. 326)

There is no basis for Defendants to seek a discovery stay in consideration of Plaintiff's Fifth Amendment rights where, as here, Plaintiff has advised the Court that he does not intend to assert the Fifth Amendment in the civil proceeding and is not seeking a stay on this basis.

## V. CONCLUSION

Based upon the foregoing, a protective order should issue whereby, with the exception of initial disclosures, evidence obtained in the civil case is not admissible in the criminal case unless independently obtained in the criminal case.

An additional order should issue denying Defendants' request for a discovery stay.

Dated: July 12, 2018          **ABIR COHEN TREYZON SALO, LLP**

By: _____
Boris Treyzon, Esq.
Douglas A. Rochen, Esq.
Attorney for Plaintiff

# DECLARATION OF DOUGLAS A. ROCHEN, ESQ.

Douglas A. Rochen:

1. I am an attorney licensed to practice law and admitted to practice before the United States District Court, Eastern District and am a partner at Abir Cohen Treyzon Salo, LLP.

2. On June 14, 2018, declarant engaged in a telephonic conference with Magistrate Judge Erica P. Grosjean and Amy Meyers.

3. At that time declarant agreed to a protective order providing that, with the exception of the initial disclosures, any documents or evidence produced in the civil case *that was not independently produced in the criminal case* could not be used in the criminal case. Declarant further agreed that Plaintiff would be required to bring a Pitchess motion in the criminal case with respect to certain documents. Declarant also advised the Court that there was outstanding discovery in both the civil and criminal case.

4. Declarant would reiterate Plaintiff's agreement to a protective order that that with the exception of initial disclosures, any documents or evidence produced in the civil case *that was not independently produced in the criminal case* cannot be used in the criminal case.

5. Declarant vehemently disagrees with the proposed issuance of a discovery stay in the civil case until the completion of the criminal trial. Even assuming a December 2018 criminal trial proceeds as scheduled, a discovery stay would prevent Plaintiff from conducting discovery which will be necessary to an expert's review. Here, this Court has set expert disclosure for February 1, 2019, and expert discovery cut-off for April 1, 2019. The requested stay would effectively require Plaintiff to conduct all discovery, inclusive of depositions, for Plaintiff's expert's review within a one month period assuming a December

2018 criminal trial. Moreover, if for whatever reason the December trial did not go forward on its current date, Plaintiff's civil case would be further and prejudiced by additional and unwarranted delays

6. As set forth herein, even if Plaintiff is convicted of resisting arrest or making improper 911 calls, Plaintiff will have claims for the use of excessive force as well as additional claims, including but not limited to the failure to provide treatment and requiring Plaintiff to walk home following significant head trauma.

7. Finally, with respect to Defense counsel's assertions that Plaintiff's counsel delayed in commenting on Defendants' "cut and paste" proposed stipulation to stay the discovery in the civil action, these issues were addressed in the Court' June 14, 2018 teleconference, about two weeks after the issue was first raised by Defense counsel. (Exhibits "H" and "I" to the Meyers Declaration) Declarant would also advise the Court that despite Defendants' request for a stay, *they have just recently noticed a series of depositions.* Essentially, Defendants have benefited by raising the issue of a discovery stay (and not responding to outstanding discovery in the civil action) while aggressively pursuing discovery to gain an advantage in the civil case.

I declare under the laws of the United States of America that the foregoing is true and correct.

Executed this 12 day of July, 2018 at Los Angeles California.

_____
Douglas Rochen

- 2 -
DECLARATION IN SUPPORT OF OPPOSITION