# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMIRO HUERTA,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF TULARE, et al.,<br><br>        Defendants. | Case No. 1:17-cv-01446-EPG<br><br>**ORDER**<br>**1) GRANTING DEFENDANTS' MOTION FOR CONTEMPT**<br>**2) DENYING PLAINTIFF'S MOTION TO COMPEL WITHOUT PREJUDICE**<br>**3) GRANTING IN PART PLAINTIFF'S MOTION TO SEAL AND STRIKE DOCUMENT ECF NO. 62**<br>**4) STAYING CASE PENDING CRIMINAL CASE**<br><br>(ECF Nos. 53, 54, 67) |

The Court has before it Defendants' Motion for Contempt (ECF No. 53), Plaintiff's Motion to Compel (ECF No. 54), and Plaintiff's Motion to Seal and Strike Document, ECF No. 62 (ECF No. 67.)

As described at the hearing on the motion for contempt, and as discussed more fully in this order, Plaintiff's counsel has repeatedly violated their own representations to this Court and this Court's clear orders. This was not a small oversight or technicality.

On July 2, 2018, Defendants filed a motion to stay this civil case pending the parallel criminal proceedings against Plaintiff, Ramiro Huerta. (ECF No. 31.) This Court denied the motion to stay based on Plaintiff's promise, affirmed in the Court's order, that "Plaintiff and his

counsel are prohibited from using in his pending criminal case any documents or other evidence produced by Defendants in this civil proceeding unless such documents or other evidence are independently obtained through the pending criminal case." (ECF No. 36.) Just four months later, Plaintiff's counsel filed a motion *in limine* in the criminal case based on evidence produced in the civil case. Plaintiff's counsel attached to the motion *in limine* deposition testimony obtained solely through this civil proceeding and argued that, based on that evidence, "no reasonable jury could find that [the prosecution] could prove the charges beyond a reasonable doubt." (ECF No. 53-1 at 7.) Because Plaintiff's counsel clearly violated the terms of this Court's order, the Court grants Defendants' Motion for Contempt and stays this civil case while Plaintiff's criminal case is pending.

Although the Court denied Defendant's motion to fully stay this case, the Court also ordered a stay of discovery of Defendants' personnel files—"the Court grants a stay of discovery of Defendants' personnel files"—until the criminal court ruled on the related motion in the criminal case and the parties had either reached agreement in the civil case or brought the dispute to this Court's attention. (ECF No. 36.) Notwithstanding this stay, Plaintiff's counsel issued subpoenas seeking Defendants' personnel files. (*See* ECF No. 60-4.) The issuance of these subpoenas also violated the clear terms of the Court's order and warrants a finding of contempt and a stay of this case.

The Court accordingly grants Defendants' Motion for Contempt and denies Plaintiff's Motion to Compel without prejudice. The Court also grants in part the Motion to Seal and Strike Document, ECF No. 62; and stays this case pending the resolution of the related criminal case.

**I. BACKGROUND**

    **A. Defendants' Motion to Stay**

Defendants moved to stay this civil case on July 2, 2018. (ECF No. 31 ("Defendants will move for an Order staying discovery currently directed to them and preventing any future discovery in the civil action until final disposition of the criminal action currently pending in the Tulare County Superior Court known as *People v. Ramiro Huerta* (Case No. PCM358718).

Defendants also seek an order of protection prohibiting Mr. Huerta and his counsel from using any documents or other evidence obtained in the civil action in any other action, and specifically his criminal action(s).").) In support of their motion, Defendants argued that "both California and federal law weigh heavily in favor of granting a temporary stay of civil discovery proceedings pending disposition of Mr. Huerta's related criminal matter. Absent a stay in the civil matter, Mr. Huerta's quest for information will effectively circumvent the criminal justice process and remove the very protections and integrity the system is founded upon." (ECF No. 31 at 3.) Defendants noted that Plaintiff's counsel in this case was the same as his counsel in the criminal action, raising the risk that counsel would use in the criminal case discovery obtained through this civil case. Defendants further argued: "'Allowing for competing civil and criminal cases to proceed simultaneously would undermine the public's right to fair and efficient prosecution of its criminal laws.' *S.E.C. v. Nicholas,* 569 F. Supp. 2d 1065, 1067 (2008). . . . Absent a stay of civil discovery, Mr. Huerta would be permitted to go around the criminal justice discovery process, thereby removing the protections, integrity and truth-seeking function of the criminal process." (ECF No. 31 at 15.)

Plaintiff opposed the motion to stay. (ECF No. 32.) In the very first section of his opposition, in his Summary of the Argument, Plaintiff stated:

> During the course of the conference call with the Court and counsel, Plaintiff agreed that, with the exception of initial disclosures, any documents or evidence produced in the civil case *that was not independently produced in the criminal case* could not be used in the criminal case. Thus, there is no dispute with respect to the parameters of a protective order already agreed to by Plaintiff. . . . Given the agreed upon protective order, there is no basis to issue a discovery stay pending completion of the criminal trial. . . . Finally, any of the issues raised by overlap of discovery in the criminal and civil case are addressed by the protective order . . . .

(ECF No. 32 at 2 (emphasis in original).) Plaintiff concluded his opposition to the stay by stating: "Based upon the foregoing, a protective order should issue whereby, with the exception of initial disclosures, evidence obtained in the civil case is not admissible in the criminal case unless independently obtained in the criminal case. An additional order should issue denying Defendants' request for a discovery stay." (ECF No. 32 at 10.)

**B. Court's Ruling Staying Discovery of Defendants' Personnel Files and Restricting Use of Documents obtained in Civil Case**

At the hearing on Defendants' motion to stay, the Court explained that, with the protective order prohibiting discovery in the civil case to be used in the criminal case, the Court was inclined to allow discovery in the civil case to proceed—with the exception of discovery of Defendants' personnel files—because there would be no prejudice to Defendants. As to Defendants' personnel files, the Court was concerned because the scope of discovery of personnel files differs between criminal and civil cases and thus a stay of discovery of the personnel files in this civil case was warranted. (ECF No. 52 at 5 ("But tentatively, I really only see one part that I think is potential prejudice, especially in light of the agreement which should be written down in a protective order that information and discovery in the civil case is not used in the criminal case, absent it being independently available in the criminal case. But there is one place that there appears to be an argument of prejudice, and that has to do with the Pitchess motion/personnel files. And there is at least an allegation by Defendants that there could be something learned out of the civil proceedings that could be used in forming an argument in the criminal proceedings. . . . As a judge, I would prefer to see what they do in the criminal case before I decide it in the civil case.").)

Accordingly, the Court granted in part and denied in part Defendants' motion to stay. The Court granted a stay of all discovery regarding Defendants' personnel files, but allowed other discovery to proceed with the clear limitation that discovery and evidence obtained in the civil case could not be used in the criminal case unless independently obtained in the criminal case. The Court's order following the hearing states:

> After hearing from the parties and considering the record, the Court GRANTS IN PART and DENIES IN PART the pending motion. As stated and explained on the record, the Court grants a stay of discovery of Defendants' personnel files until after the court in the criminal proceeding rules on Plaintiff's anticipated Pitchess motion or otherwise rules on the scope of discovery of Defendants' personnel files in the criminal proceedings. Once that ruling in the criminal proceeding has been issued, the parties are directed to meet and confer regarding discovery of Defendants' personnel files in this civil case. After this meet and confer has occurred, Plaintiff has leave to file a motion to compel, if needed, regarding the

> discovery of Defendants' personnel files without any informal conference with
> the Court. . . . The Court reiterates and extends its previous ruling that, with the
> exception of Defendants' initial disclosures, Plaintiff and his counsel are
> prohibited from using in his pending criminal case any documents or other
> evidence produced by Defendants in this civil proceeding unless such documents
> or other evidence are independently obtained through the pending criminal case.

(ECF No. 36.)

### C. Defendants' Motion for Contempt and Sanctions

On January 23, 2019, Defendants filed the Motion for Contempt, arguing that Plaintiff violated the Court's protective order by using information obtained in the civil case to support a motion *in limine* filed in the criminal case. (ECF No. 53.) Defendants attached to their Motion for Contempt a copy of the motion *in limine* that Plaintiff's counsel in this case (i.e., Mr. Huerta's defense counsel in the criminal case) had filed in the criminal case on Plaintiff's behalf. The motion *in limine* clearly relied on evidence produced in this civil case, stating:

> This case is unique among criminal cases because the Tulare County Sheriff's
> deputies involved therein (the TCS deputies) have had their depositions taken in
> the Federal Civil Rights Case. . . . Highlighted portions of the TCS deputies'
> transcripts are attached to the Owdom Declaration as Exhibits C (Coldren), D
> (Dillon), E (Hernandez), F (Ceja), and G (Torres-Salcido). . . . This sworn
> testimony renders it unnecessary to proceed to trial because, even drawing all
> inferences in the Plaintiff's favor, no reasonable jury could find that the
> [prosecution] could prove the charges beyond a reasonable doubt.

(ECF No. 53-1 at 7.) The conclusion of the motion *in limine* similarly argued: "This case is unique because this Court has been presented with the testimony of essentially all material witnesses prior to trial. As a matter of law, no criminal case can be made against Huerta for the misdemeanor charges offered." (*Id.* at 19.)

In the Motion for Contempt, Defendants seek an order holding Plaintiff in civil contempt for violating this Court's protective order precluding Plaintiff from using in his pending criminal case "any documents or other evidence produced by Defendants in this proceeding unless such documents or other evidence are independently obtained through the pending criminal case." (ECF No. 53 at 1-2 (citing ECF Nos. 30, 36).) Defendants seek as relief an order (1) finding Plaintiff in civil contempt for violating the Court's orders, (2) requiring Plaintiff to reimburse Defendants for their attorney's fees and costs, and (3) requiring Plaintiff to come into

full compliance with the Court's orders within 5 days of the Court's ruling or be subject to $1,000 per day coercive sanction for future non-compliance.[1] (*Id.*)

In Plaintiff's opposition to the Motion for Contempt, he concedes that his counsel filed a motion *in limine* in the criminal case based on and attaching depositions obtained in this civil proceeding. (ECF No. 59.) However, Plaintiff argues that he has not violated this Court's protective order because the motion *in limine* has not yet been heard in the criminal case due to a continuance of the trial. (*Id.* at 2.) Additionally, Plaintiff argues, "No State Court jury has ever been empaneled in the Criminal Action; there has never been any request that any jury consider any material in the MIL [motion *in limine*], nor any matter related to the Civil Rights Action whatsoever. Not a shred of 'document[s]' or 'evidence' in the Federal Civil Rights Action has been used in evidence before any State Court jury." (*Id.*) Plaintiff also argues that "the DA [district attorney] has long since been in possession of the transcripts and [] they are 'in play' in the criminal case." (*Id.*) Plaintiff's counsel goes on to claim that Defendants' Motion for Contempt "is completely without merit and frivolous, and that I [Plaintiff's counsel] would seek sanctions in the event it is not withdrawn." (*Id.* at 3 (further claiming that motion for sanctions "is utterly without evidence supporting Defendants' assertion that this Court's Discovery Order was violated").) Plaintiff also claims that there was no violation because "these items are in the possession of the DA [District Attorney], and because they uniformly contain exculpatory evidence." (*Id.* at 4.) Plaintiff then represents, in italics: "*the Tulare County DA is and has been in possession the* [sic] *deposition transcripts taken in the Federal Civil Rights Action long before the filing of this motion by Myers and TCC.*" (*Id.* at 6.) Plaintiff further argues that "it borders on the outrageous to suggest that there are certain matters which the State Court Judge should not see, where there is a parallel federal proceeding." (*Id.* at 7.)

In their reply in support of the Motion for Contempt (ECF No. 60), Defendants respond

---

[1] Defendants subsequently requested that severe sanctions be imposed based on Plaintiff's counsel's filing of a declaration that attached "hundreds of unredacted personnel records wrongfully obtained in violation of this Court's Order including full social security numbers, driver's license numbers, dates of birth and more." (ECF No. 63.) Defendants also requested that these documents be immediately sealed, and that Plaintiffs be ordered to immediately destroy all records improperly received and file certification of same with this Court. (ECF No. 63.) Plaintiff's filing of these confidential documents and related issues will be addressed below in connection with Plaintiff's motion to seal.

to Plaintiff's arguments and provide new evidence that Plaintiff's counsel also violated this Court's stay of discovery of Defendants' personnel files by issuing subpoenas in this civil case to six different law enforcement agencies seeking Defendants' personnel records. (*See* ECF No. 60-4 (subpoenas issued in this civil case by Plaintiff's counsel to the Hayden Police Department for "Deputy Hector Hernandez's entire personnel file from Hayden Police Department for the years for which he was employed from 2013-2014 . . . ."; to the Bakersfield Police Department for "Deputy James Dillon's entire personnel file from Bakersfield Police Department for the years for which he was employed from 2014 to 2017 . . . ."; to the City of Visalia Police Department for "Officer Michale Coldren's entire personnel file from City of Visalia Police Department for the years for which he was employed since August of 2018 . . . ."; to the Santa Ana Police Department for "Lieutenant Ron Smith's entire personnel file from Santa Ana Police Department for the years for which he was employed from 1987-1988 . . . ."; to the Porterville Police Department for "Lieutenant Ron Smith's entire personnel file from Porterville Police Department for the years for which he was employed from 1988-1999 . . . ."; and to the Mammoth Police Department for "Deputy Hector Hernandez's entire personnel file from Mammoth Police Department for the years for which he was employed from 2012-2013 . . . .").)

### D. Hearing on Motion for Contempt

The Court held a hearing on the Motion for Contempt on February 22, 2019. (*See* ECF No. 61.) During the hearing, counsel for Plaintiff primarily argued that they did not violate the Court's protective order because the DA already had the documents that were attached to the motion *in limine* that was filed in the criminal case. (Plaintiff's counsel did not reiterate other arguments made in Plaintiff's opposition, such as the fact that documents were sent to the judge in the criminal case, rather than the jury, or that the protective order could be ignored because it would improperly prevent a judge in the criminal case to see relevant and exculpatory evidence.)

In support of counsel's argument, Plaintiff's counsel represented that the DA issued a subpoena for the deposition transcripts in the civil case and then produced those transcripts to Plaintiff's counsel as part of the criminal case. When the Court pressed Plaintiff's counsel on

whether the DA had produced those transcripts before counsel filed the motion *in limine*, Plaintiff's counsel stated, "I believe so, your honor." After some discussion, Plaintiff's counsel further explained that throughout the Fall of 2018, there had been discussions in the criminal case about getting the civil depositions for use in the criminal case, and that the DA had obtained the civil transcripts independently, continuing "and so that's why I believed that it was not a violation of the Court's order because the DA had independently produced them to counsel." The Court also asked, "At any time when you were talking with the DA, did you ever tell them that there's a Court order though that none of that evidence is supposed to be used here?" Plaintiff's counsel responded, "No your honor, I did not."

Regarding the subpoenas for the personnel files, the Court asked Plaintiff's counsel, "Why are you subpoenaing them before the motion to compel is done?" Plaintiff's counsel, Mr. Rochen, responded "that's total error on my part. [inaudible] That should not have gone out and I don't know how it went out."[2]

### E. Submissions Following the Hearing

On February 26, 2019, counsel for Plaintiff submitted a supplemental declaration stating that counsel had withdrawn the motion *in limine* in the criminal case, and that counsel had received an email indicating that deposition transcripts had been produced to the DA on November 19, 2018, and thus "I believed that such materials were available for use in the Criminal Case." (ECF No. 66 at 2.)

On February 25, 2019, Defendants filed additional submissions which, they argued, established that Plaintiff's counsel had made misrepresentations to the Court during the February 22, 2019, hearing. (ECF No. 63.) One of those submissions is the Declaration of Joe L. Alindajao, the Deputy District Attorney in Mr. Huerta's criminal case. (ECF No. 63-2.) Mr. Alindajao explains that the DA's office issued subpoenas for depositions and rulings in this civil case on November 19, 2018. Regarding production of that information to Mr. Huerta's counsel, Mr. Alindajao states: "On December 11, 2018 I produced to counsel for Ramiro Huerta via

---

[2] These quotations are taken from the audio file of the hearing, which is available upon request.

8

1 Damion e-Discovery the written deposition transcripts" from the civil case. (ECF No. 63-2 at 3.) Furthermore, "[o]n or about December 12, 2019 [sic], the Damion e-Discovery system time/date stamp indicated that the written deposition transcripts were successfully downloaded by Huerta's counsel on December 12, 2019 [sic] at approximately 8:25 am." (ECF No. 63-2 at 3.) Notably, Plaintiff's counsel filed the motion *in limine* at issue, which relied on evidence from the civil case, on November 28, 2018, thirteen days before Plaintiff received those documents from the DA.

Defendants also submitted correspondence between Plaintiff's counsel, including Mr. Rochen, and counsel for the Visalia Police Department regarding one of the subpoenas for personnel files. In that correspondence, Mr. Rochen, the same attorney who told this Court that issuance of the subpoenas was "a mistake," wrote the following to justify requesting the personnel files despite this Court's stay on all discovery regarding such documents:

> I should inform you that said stay applies only to the Tulare County Sheriff's Department personnel records. As you are not a party to the civil suit, the order is not applicable to your department and we maintain we are entitled to any such relevant records . . . ."

(ECF No. 63-3 at 4-5.)

## II. ANALYSIS

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted). "[The contemnors] must show they took every reasonable step to comply." *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). "Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense." *Id.* at 856.

Here, the Court has no difficulty finding that Defendants met their burden of showing by clear and convincing evidence that Plaintiff's counsel violated a specific and definite order of the Court. The Court also has no difficulty finding that Plaintiff's counsel has failed to

demonstrate that they were unable to, nor that they took every reasonable step to, comply with the Court's order.

The Court's order stated that "with the exception of initial disclosures, Plaintiff and his counsel are prohibited from using in his pending criminal case any documents or other evidence produced by Defendants in this civil proceeding unless such documents or other evidence are independently obtained through the pending criminal case." (ECF No. 36.) Here, Plaintiff's counsel used evidence in his pending criminal case that was produced by Defendants in the civil case by submitting the deposition transcripts in connection with a motion filed in the criminal case. (ECF No. 53-1.)

The only real dispute appears to be surrounding the word "independently." Plaintiff's counsel seems to argue that the depositions from the civil case were independently obtained through the pending criminal case because the DA subpoenaed that information and produced them to Mr. Huerta's counsel. Thus, they argue, so long as the DA also had evidence from the civil case, Mr. Huerta was allowed to use in his criminal case any evidence obtained in the civil case notwithstanding this Court's order.

This argument fails for many reasons.

First, the depositions were not independently obtained in the criminal case because there was nothing independent about their production and use in the criminal case. It is undisputed that the depositions did not come from independent discovery in the criminal case. These were depositions obtained solely in the civil case. Indeed, Plaintiff's counsel argued in the motion *in limine* in the criminal case that "[t]his case is unique among criminal cases because the Tulare County Sheriff's deputies involved therein . . . have had their depositions taken in the Federal Civil Rights case." (ECF No. 53-1 at 7.) This statement makes clear that Mr. Huerta had this information solely because of the civil case and could not and did not obtain the information through the criminal case. There was nothing independent about it.

The civil depositions were also not independently produced because Mr. Huerta's attorneys facilitated their production. Although no one could remember exactly how the DA learned about the depositions, such information must have come from Mr. Huerta's attorneys

because only they knew about the depositions in the civil case. Mr. Huerta's attorneys also failed to tell the DA or the criminal court that the depositions could not be used in the criminal case, per this Court's order. Thus, it was only due to Mr. Huerta's attorneys' actions that the information in the civil case went to the DA at all.

Furthermore, even under counsel's strained interpretation of the Court's order, the evidence was not "independently obtained through the pending criminal case" when counsel used that evidence in the criminal case because the DA did not produce the transcripts to Plaintiff's counsel until after counsel had filed the *motion in limine*. Again, despite Plaintiff's counsel telling the Court at the hearing that "that's why I believed that it was not a violation of the Court's order because the DA had independently produced them to counsel," in fact the DA had not yet produced the documents to Plaintiff's counsel when counsel filed the motion *in limine*. Rather, the DA produced the documents two weeks after the motion *in limine* was filed. Thus, under no circumstances did Plaintiff's counsel have the ability to use the evidence based on the exception when "such documents or other evidence are independently obtained through the pending criminal case." The evidence was indisputably not obtained through the pending criminal case before Plaintiff's counsel used that evidence in the criminal case.

Plaintiff's counsel's excuse for using the documents also does not fit with the entire purpose of this Court's order, and their own promise not to use information from the civil case in the criminal case. As summarized above, the protective order issued as a result of Defendant's motion to stay discovery in the civil case in order to prevent Mr. Huerta from obtaining information in the civil case to which he was not entitled in the criminal case. It was Plaintiff's counsel who opposed that motion on the basis that a protective order limiting use of such information in the criminal case would satisfy any fears of proceeding in parallel. In that context, it is disingenuous to claim that the protective order allowed counsel to use evidence uniquely obtained in the civil case so long as the DA also had access to such information. Such a hollow protective order would have done nothing to allay Defendants' and the Court's concerns with proceeding with civil discovery in parallel with the criminal case. Put another way, if Plaintiff's counsel had responded to Defendants' motion to stay by saying "we will

make sure the DA also has the evidence in the civil case if we decide to use it in the criminal case," the Court would have granted the motion to stay.

Plaintiff's counsel also clearly violated the stay of discovery of Defendants' personnel files. Plaintiff's counsel issued multiple subpoenas in this case for production of Defendants' personnel files while the stay was in place. They did so without either consent from Defendants' counsel or an order from this Court.

Then, when confronted, Plaintiff's counsel made misrepresentations to both to the Court and to subpoena recipients. Mr. Rochen said during the hearing on the Motion for Contempt that issuance of the subpoenas was "a mistake." But Mr. Rochen is one of the issuing officers of the subpoenas. He is also one of the signatories of a letter addressing whether the subpoenas complied with the Court's stay order. Specifically, just eight days before Mr. Rochen told his Court that issuance of the subpoenas was a mistake, he and his co-counsel wrote to Visalia Police Department as follows:

> As it is apparent you have spoken to Tulare County Counsel regarding the District Court's July 27, 2018 order staying discovery as to the personnel files of the Tulare County Sherriff Deputies named in the civil complaint, I should inform you that said stay applies only to the Tulare County Sheriff's Department personnel records. As you are not a party to the civil suit, the order is not applicable to your department . . . .

(ECF No. 63-3 at 4.) That is simply not true. Nothing in the Court's order limits the stay to personnel files held by the Tulare County Sherriff's Department. (ECF No. 36 ("the Court grants a stay of discovery of Defendants' personnel files . . . .").) The fact that subpoena recipients are not parties to this action makes no difference. Mr. Huerta is a party to this action. The stay of discovery applies to him. It is Mr. Huerta (and his counsel) who violated the stay when he sought discovery of Defendants' personnel files. Indeed, Plaintiff's counsel did not even mention this false justification to the Court. Instead, they pretended issuance of the subpoenas was a mistake. But it was no mistake. Plaintiff's counsel knowingly and intentionally violated the Court's stay order.

The conduct of Plaintiff's counsel taken as a whole shows a deliberate disregard of the Court's orders. The Court finds that there is clear and convincing evidence that Plaintiff violated

12

the Court's specific and definite protective order, as stated during the June 14 and July 27 hearings and summarized in minute orders ECF Nos. 30 and 36, which prohibits Plaintiff from using in the criminal case any information obtained in the civil case unless such information is independently obtained in the criminal case. The Court also finds clear and convincing evidence that Plaintiff violated the Court's specific and definite stay order regarding Defendants' personnel files. (ECF No. 36.) The Court further finds that Plaintiff did not take every reasonable step to comply with the Court's protective order. (ECF Nos. 30, 36.) Accordingly, the Court finds Plaintiff in Contempt of Court for violating this Court's orders.

As to the remedy for the contempt, during the January 22, 2019, hearing, the Court ordered Plaintiff's counsel to provide to the criminal court judge a copy of this Court's protective order. The Court did not require Plaintiff to withdraw the motion *in limine* filed in the criminal case because the issue of whether and to what extent the deposition transcripts that have now been disclosed in the criminal case can be used in that proceeding is within the discretion of the criminal court judge. However, the Court notes that Plaintiff's counsel has now voluntarily filed a notice of withdrawal of the motion *in limine* in the criminal case and has provided the criminal court with a copy of one of the two minute orders that summarize the Court's protective order. (ECF No. 66 at 5-6 (attaching ECF No. 36).) Accordingly, the Court will not order further action regarding the motion *in limine*.

Plaintiff's counsel is ordered to pay Defendants' costs and attorneys fees associated with filing the motion for contempt and sanctions, including costs and fees associated with meet and confer and investigation to uncover Plaintiff's violation. *See* Fed. R. Civ. P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorneys fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.").

In light of the Court's finding that Plaintiff has violated the Court's protective order, which was the basis for denying Defendants' stay of discovery, the Court is staying this case pending resolution of the criminal case.

The Court will also deny Plaintiff's Motion to Compel without prejudice. Plaintiff may re-file that motion when the stay is lifted.

### III. PLAINTIFF'S MOTION TO SEAL AND STRIKE

During the January 22, 2019, the Court determined that Plaintiff's subpoenas seeking Defendants' personnel files violated the Court's stay of discovery. The Court directed Plaintiff to withdraw those subpoenas and to file a declaration of counsel certifying that the subpoenas had been withdrawn.

On February 25, 2019, Plaintiff filed a declaration (ECF No. 62) which includes as attachments confidential employment records Plaintiff received in response to the subpoenas.[3] In the Motion to Seal and Strike, Plaintiff seeks to strike and remove this declaration from the docket, explaining that the confidential personnel records were attached in error. The Court grants the request to strike and permanently seal this document but denies the request to remove the document from the docket. Because the filing of this declaration with the confidential information appears to have been inadvertent, and Plaintiff immediately attempted to correct the error, the Court does not find sanctions for this filing to be warranted.

IT IS ORDERED:

1. Defendants' Motion for Contempt (ECF No. 53) is GRANTED. The Court finds Plaintiff in civil contempt of this Court's protective order and stay order set forth during the June 14, 2018, and July 27, 2018, hearings and summarized in the Court's minute orders (ECF Nos. 30 and 36).

2. This case is STAYED pending resolution of the related state criminal proceeding and until further order of the Court. The parties are directed to file a joint notice of resolution of the state criminal proceeding within thirty days of such resolution.

3. Plaintiff's Motion to Compel (ECF No. 54) is DENIED without prejudice.

4. Plaintiff is directed to withdraw all subpoenas that have been issued seeking Defendants' personnel files, and to file a declaration certifying that such subpoenas have been

---

[3] Plaintiff's counsel filed a subsequent replacement declaration that did not include the confidential personnel files. (*See* ECF No. 64.)

1 withdrawn. To the extent Plaintiff has already complied with this requirement and filed
2 certification of the same, Plaintiff need not repeat that process.

3     5.      Plaintiff is directed to destroy any personnel records already received and to file,
4 within 14 days from today, a declaration certifying the same.

5     6.      Plaintiff's Motion to Seal and Strike Document, ECF No. 62 (ECF No. 67) is
6 GRANTED in part. The Clerk of the Court is directed to STRIKE and permanently SEAL
7 document ECF No. 62, Declaration of Douglas A. Rochen, filed on February 25, 2019. To the
8 extent Plaintiff seeks to have this document removed from the docket, the motion is DENIED.

9     7.      Plaintiff's counsel shall pay Defendants' reasonable attorneys fees and costs
10 incurred in bringing the Motion for Contempt. Such sanction shall be divided equally between
11 the Owdom Law Firm and the Abir, Cohen Treyzon Salo, LLP law firm unless the two firms
12 reach a separate agreement. The parties shall meet and confer regarding such an amount and
13 contact the Court if there is a dispute regarding the amount of sanctions.

IT IS SO ORDERED.

Dated: **March 25, 2019**           /s/ *Erin P. Gross*
                                         UNITED STATES MAGISTRATE JUDGE