UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMIRO HUERTA,<br><br>       Plaintiff,<br><br>   v.<br><br>COUNTY OF TULARE, et al.,<br><br>       Defendants. | Case No. 1:17-cv-01446-EPG<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR CONTEMPT AND SANCTIONS; GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; AND DENYING PLAINTIFF'S REQUEST FOR SANCTIONS<br><br>(ECF Nos. 92, 92-10, 98) |

Plaintiff Ramiro Huerta ("Plaintiff") filed the complaint in this action on October 25, 2017, based on an interaction between himself and County of Tulare Sheriff's deputies on April 25, 2017. (ECF No. 1). Plaintiff alleges that Sheriff's deputies assaulted him outside his house after Plaintiff repeatedly called police to report suspicious activities. Plaintiff's complaint names Defendants County of Tulare, Tulare County Sheriff, Michael Coldren, Laura Torres-Salcido, Hector Hernandez, Salvador Ceja, James Dillon, Ronald Smith, and unknown Tulare County Sheriff Deputies named as Does 7-50 and Roes 1-50 ("Defendants") and alleges several violations of state tort law, violations of the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and violations of state law pursuant to CA Civil Code §§ 52.1, 52.3 and 52.45. (ECF Nos. 1, 22).

Plaintiff was criminally charged for offenses related to these events. The use of discovery from this civil case in the criminal case against Plaintiff has been heavily litigated among the parties throughout this case and underlies Defendants' current motion for sanctions.

//

//

Before the Court is Defendants' Motion for Contempt and Sanctions. (ECF No. 92). Defendants' motion claims that Plaintiff's counsel used evidence obtained from this civil case in the criminal trial in violation of this Court's protective order. Defendants seek dismissal of the case in full, monetary sanctions, and a referral of Plaintiff's counsel to a state disciplinary board. (ECF No. 92). Defendants also request this Court judicially notice certain documents related to the motion for contempt. (ECF No. 92-10). Plaintiff filed a timely opposition, which also included a request for Rule 11 sanctions. (ECF No. 98). Defendants filed a reply. (ECF No. 99). An extensive hearing was held on February 18, 2022. (ECF No. 101). Douglas Rochen, Boris Treyzon, Brianna Franco and Matthew Owdom appeared on behalf of Plaintiff. Amy Myers appeared on behalf on Defendants. Supplemental briefing was filed by both parties on February 28, 2022 (ECF Nos. 104; 105), and by Plaintiffs on March 7, 2022 (ECF No. 107).

For the reasons that follow, the Court will GRANT IN PART Defendants' request for sanctions and GRANT Defendants' request for judicial notice. The Court will DENY Plaintiff's request for Rule 11 sanctions.

## I.      BACKGROUND

This action proceeds on Plaintiff's Second Amended Complaint filed on April 19, 2018 claiming numerous violations of federal and state law arising from an incident in which Plaintiff alleges he was violently assaulted by several deputies of the County of Tulare Sheriff's department. (ECF Nos. 1; 22).

### A.  Protective Order Prohibiting Use of Civil Documents in Criminal Case

Shortly after discovery opened in this case, Defendants objected to providing certain documents to Plaintiff that were not available through discovery in the related criminal case. Following an informal conference and limited stay to address the dispute, on July 2, 2018, Defendants filed a formal motion for an order "staying discovery currently directed to them and preventing any future discovery in the civil action until final disposition of the criminal action currently pending in the Tulare County Superior Court known as People v. Ramiro Huerta (Case No. PCM358718). Defendants also seek an order of protection prohibiting Mr. Huerta

and his counsel from using any documents or other evidence obtained in the civil action in any other action, and specifically his criminal action(s)." (ECF No. 31, p. 1-2).

Plaintiff filed an opposition on July 12, 2018, arguing that a stay was not necessary because Plaintiff's counsel had already agreed not to use any evidence produced in the civil case in the criminal case, unless it was independently produced in the criminal case, stating:

> During the course of the conference call with the Court and counsel, Plaintiff agreed that, with the exception of initial disclosures, any documents or evidence produced in the civil case that was not independently produced in the criminal case could not be used in the criminal case. Thus, there is no dispute with respect to the parameters of a protective order already agreed to by Plaintiff. . . . Given the agreed upon protective order, there is no basis to issue a discovery stay pending completion of the criminal trial. . . . Finally, any of the issues raised by overlap of discovery in the criminal and civil case are addressed by the protective order . . . .Consequently, there is no basis to stay discovery and prejudice Plaintiff's ability to prepare his civil case by the issuance of a discovery stay.

(ECF No. 32, p. 2-3).

Based on Plaintiff's agreement not to use evidence from the civil case in the criminal case, the Court denied Defendants' motion to stay except as to Defendants' personnel files, and confirmed the following protective order on the record:

> As stated and explained on the record, the Court grants a stay of discovery of Defendants' personnel files until after the court in the criminal proceeding rules on Plaintiff's anticipated *Pitchess* motion or otherwise rules on the scope of discovery of Defendants' personnel files in the criminal proceeding…The Court reiterates and extends its previous ruling that, with the exception of Defendants' initial disclosures, Plaintiff and his counsel are prohibited from using in his pending criminal case any documents or other evidence produced by Defendants in this civil proceeding unless such documents or other evidence are independently obtained through the pending criminal case.

(ECF No. 36).

### B.  Plaintiff's Counsel Violates Protective Order and is Held in Contempt

On January 23, 2019, Defendants filed a motion for contempt and sanctions against Plaintiff for violations of the Court's order. (ECF No. 53). Defendants argued that Plaintiff's counsel violated this Court's protective order by, among other things, filing a motion *in limine* in the criminal court asking for dismissal of the criminal charges against Plaintiff supported by

3

deposition testimony taken in this civil case. Indeed, Plaintiff counsel's filing in the criminal court argued: "This case is unique because this Court has been presented with the testimony of essentially all material witnesses prior to trial. As a matter of law, no criminal case can be made against Huerta for the misdemeanor charges offered." (ECF No. 53-1, p. 19).

On March 26, 2019, the Court entered an order finding Plaintiff's counsel in contempt. (ECF No. 69). In that order, the Court stated that "[t]he conduct of Plaintiff's counsel taken as a whole shows a deliberate disregard of the Court's orders." (ECF No. 69, p. 12). Plaintiff's counsel was ordered to pay Defendants' attorney fees and costs. (Id. at 13). The Court also stayed the civil proceeding until the resolution of Plaintiff's criminal case. (Id.). Because certain civil deposition transcripts were produced in the criminal case through subpoenas issued by the prosecution, the Court stated that "the issue of whether and to what extent the deposition transcripts that have now been disclosed in the criminal case can be used in that proceeding is within the discretion of the criminal court judge." (ECF No. 69, p. 13).

### C.  Lifting of Stay Given Delay in Criminal Case

The stay remained in place for over two years. On August 4, 2021, the Court held a conference to discuss the status of the criminal case. (ECF No. 81). The Court noted the stay was originally imposed, in part, as a sanction for Plaintiff counsel's use of discovery materials in the criminal proceeding in violation of the protective order. The Court then advised that the stay may be lifted under similar limitations, stating "I am going to trust that [those limitations], given all that's happened, will be abided by."[1] On August 19, 2021, the Court entered an order lifting the stay, including the discovery stay on Defendants' personnel files. (ECF No. 84, p.4). The Court confirmed the prior protective order remained in place. (Id.) ("The Court's order that all documents and information produced in this case, with the exception of Defendants' initial disclosures, shall not be used in the parallel state court criminal proceeding unless independently produced in that criminal case, subject to sanctions, shall remain in place.").
\\\

---

[1] This quotation was taken from the audio file of the proceeding, which is available to the parties upon request.

4

### D.  Disputes Around Plaintiff's Criminal Trial

As Plaintiff's criminal trial approached, the dispute regarding the use of information in the civil case arose again.

At the request of Defendants, on October 8, 2021, the Court held an informal discovery dispute conference. (ECF No. 87). At issue were subpoenas ordered by Mr. Huerta's criminal defense counsel (Plaintiff's counsel this case), for individuals designated as Federal Rule of Civil Procedure 30(b)(6) witnesses ("30(b)(6) witnesses") in the civil case to appear as witnesses in the criminal trial. Defendants also expressed concern about the use of the civil deposition transcripts, which had already been produced in the criminal case.

The Court began the conference by explaining, per Court procedure, that it was not issuing any formal orders through the informal process and would give permission for the parties to file a discovery motion on an expedited basis if they chose to do so:

> **The Court:** I'm not going to make a formal ruling at the end of this. If--I 'm going to give you some thoughts. If the parties cannot resolve the issue, I am going to give permission to file a discovery motion. Here it would probably be a -- a motion to quash. Well, I have some options but a discovery motion for Defendants, and I -- I had that in mind when I tried to get on this call quickly because I -- I know, as defense counsel mentioned, if there does need to be formal motion practice, the issue is pressing.

(ECF No. 103, p. 3-4).

Without giving a formal opinion on whether the subpoenas for the 30(b)(6) witnesses would violate the protective order, the Court stated that "[t]he criminal court needs to decide under criminal rules what it's going to let in or not." (ECF No. 103, p. 18). Without deciding the issue, the Court leaned against instructing the criminal court that it cannot allow certain witnesses to testify:

> **The Court:** I think all that . . . makes me lean toward not taking further action and letting the criminal court handle it as they see fit. And I don't know if there's anything I need to take that is making it clear I'm not necessarily blessing it. I -- I still do think it was gotten through a violation of my protective order, but I'm not currently leaning towards telling Mr. Huerta that he can't use these witnesses.

(ECF No. 103, p. 12).

During the conference, Plaintiff's counsel confirmed their understanding that they could not use evidence from the civil case during the criminal trial:

> **Mr. Treyzon:** The Court has made it pretty clear no evidence or documents, and that would include that identity of witnesses that was included on that that is obtained in civil discovery may be used in criminal proceeding. That is clear from the Court's order.

(ECF No. 103, p. 13). Indeed, Plaintiff's counsel stated that the only issue was whether they could have witnesses designated to speak for the corporation, i.e., the County of Tulare:

> **Mr. Treyzon:** We did not lodge, obviously, deposition testimony. We did not lodge deposition transcripts. We did not refer to any documents. The only thing we asked for, for instance, in the criminal proceeding involve the individuals who would speak on behalf of the corporation.

(ECF No. 103, p. 14). Plaintiff's counsel left open the possibility of using civil deposition testimony for impeachment purposes:

> **Mr. Treyzon:** And if we believe that we possess impeachment evidence, evidence under penalty of perjury that is directly contradictory to the testimony being offered, I think we would be in a position to use that sworn testimony for impeachment, not rebuttal but literally impeachment, 'You said one thing here. You said another thing there.'

(ECF No. 103, p. 14-15). After the informal conference, the Court granted the parties leave to file appropriate discovery motions on an expedited basis, but they did not do so. (ECF No. 88).

## II.     MOTION FOR CONTEMPT AND SANCTIONS

### A.  Defendants' Motion

On November 19, 2021, Defendants filed a motion for sanctions and request for stay. (ECF No. 92).[2] Defendants' motion is based on several alleged violations of this Court's protective order, including referencing information obtained during the civil proceeding during a motion *in limine* and witness examination at the criminal trial. (Id.)

---

[2] Defendants subsequently withdrew their request for a stay and a specific and definite protective order against Plaintiff's counsel. (ECF No. 99, p. 1).

Defendants argue sanctions are warranted based on numerous legal grounds. First, Defendants urge the Court to exercise its inherent authority to impose attorneys' fee sanctions because Plaintiff's counsel "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (ECF No. 92-1, p. 30). Second, Defendants argue compensatory sanctions are warranted under Federal Rule of Civil Procedure 37(b), which authorizes an award of attorney's fees and costs for violations of a discovery order, as well as upon a finding of contempt. (Id. at p. 28, 31). Finally, Defendants argue dismissal is appropriate under the factors set forth in Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986). (Id. at p. 32).

Defendants seek an award of costs and attorney's fees and costs totaling $42,108.70 based on a finding Plaintiff's counsel acted in contempt of this Court's order and in bad faith.[3] (ECF No. 92-1). Additionally, Defendants request dismissal of this action, and a disciplinary referral of Plaintiff's counsel to the State Bar.[4] (Id.).

### B. Plaintiff's Opposition

Plaintiff's opposition argues a contempt finding is not warranted because Plaintiff's counsel substantially complied with the terms of the underlying court order under a good faith and reasonable interpretation of that order.[5] (ECF No. 98). Accordingly, any inadvertent violation during questioning was merely technical. (Id. at p. 22-28). Plaintiff's opposition also requests Rule 11 sanctions against Defendants because Defendants' motion for contempt is "frivolous, unsupported and intended solely to inflame and mislead the Court." (Id. at p. 40).

---

[3] Defendants provided an itemized declaration of fees and costs totaling $42, 866.70. (ECF No. 105-1, p. 3-5, 7). On March 4, 2022, Defendants' counsel informed the Court the previous total included a mathematical error amounting to a $773 difference. Accordingly, the new total is $42, 108.70. This total was subsequently acknowledged by Plaintiff. (ECF No. 107, p. 7).

[4] Defendants' motion also requested "a large coercive sanction to be paid to the Court." (ECF No. 92-1, p. 34). However, the Court does not consider coercive sanctions an appropriate remedy because the criminal matter will not be retried and so the underlying protective order regarding Plaintiff's criminal case does not require future compliance. See Shell Offshore Inc. v. Greenpeace, Inc., 815 F.3d 623, 629 (9th Cir. 2016) (coercive sanctions may be used to bring a defendant into compliance with a court order).

[5] Plaintiff also filed evidentiary objections in support of Plaintiff's opposition motion. (ECF No. 98-4). First, these objections are overruled insofar as this is not a trial where the Federal Rules of Evidence would apply. Nevertheless, the Court notes the objections to Ms. Myers declaration fail since much of Ms. Myers declaration appears to be a continuation of her argument, and not a submission of evidence. Additionally, the Court has relied on submissions from court documents regarding what occurred in the trial court, and not the summary of Ms. Myers.

Plaintiff also denies that Plaintiff's counsel violated the protective order, which Plaintiff claims was too vague and indefinite to be enforced or reasonably followed. (Id. at p. 20-21). Accordingly, Plaintiff counsel's "interpretation of the subject order was reasonable and made in good faith." (Id. at p. 21). Furthermore, Plaintiff's counsel "substantially complied" with the criminal court's instructions, and any technical violation does not warrant sanction under Rule 37. (Id. at p. 25). In response to the terminating sanctions requested by Defendants, Plaintiff argues the relevant factors do not support dismissal because dismissal is only appropriate in "extreme circumstances." (Id. at p. 26, citing Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998)).

## VI.      REQUEST FOR JUDICIAL NOTICE

Defendants request the court take judicial notice pursuant to Federal Rule of Evidence 201 of numerous court minute orders, filings, and transcript excerpts from the criminal case that Defendants provide in support of their claim that Plaintiff's counsel repeatedly violated this Court's order during the criminal trial. (ECF No. 92-10; ECF No. 99, p. 13). Plaintiff filed an objection to Defendants' request on the ground the submitted documents are irrelevant to the civil action and contain disputed facts. (ECF No. 98-5, p. 6).

The Court grants Defendants' request for judicial notice of Exhibits 1-25 on the basis the exhibits are court documents which "direct[ly] relat[e] to the matters at issue." See United States v. S. Cal. Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2009) (quoting U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)); see also Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The Court takes notice of the exhibits not for the truth of any argument or assertion within the court documents, but for the purposes of what occurred during the criminal trial including whether and under what circumstances Plaintiff's counsel used evidence from the civil case. See S.Cal. Edison Co., 300 F. Supp 2d at 974 ("[A] court can only take judicial notice of the existence of… a motion or of representations having been made therein [] but not the veracity of the arguments and disputed facts.").

### III.   VIOLATION OF PROTECTIVE ORDER

**A.  Legal Standards**

Civil contempt is appropriate when a party disobeys a specific and definite court order by failing to take all reasonable steps to comply. In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). The Ninth Circuit standard for finding a party in civil contempt is well settled: "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." F.T.C. v. Affordable Media, 179 F.3d 1228 (9th Cir. 1999). A district court has "wide latitude in determining whether there has been a contemptuous defiance of its order." Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir. 1971).

Civil contempt is not excused by a party's subjective belief they acted in compliance with a court order when that belief is "objectively unreasonable." Taggart v. Lorenzen, 139 S.Ct. 1795, 1802 (2019). However, "a [party] should not be held in contempt if [their] action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" In re Dual-Deck at 695 (quoting Vertex Distrib. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889-91 (9th Cir. 1982)). "Substantial compliance with the court order is a defense to civil contempt and is not vitiated by a few technical violations where every reasonable effort has been made to comply." Id.

**B.  Analysis**

#### 1.  Violation of Protective Order

The Court begins by evaluating whether Defendants have shown by clear and convincing evidence that Plaintiff's counsel violated a specific and definite order of the court. The Court's order prohibited Plaintiff's counsel "from using in [Plaintiff's] criminal case any documents or other evidence produced by Defendants in this civil proceeding unless such documents or other evidence are independently obtained through the pending criminal case." (ECF No. 36).

In construing this order, this Court is cognizant that the criminal court specifically ordered that civil deposition testimony could be used as impeachment evidence in the criminal trial, but not lodged into evidence, stating:

> If there's something else that -- where they're -- you know, they can be impeached on but the specific thing cannot be -- I agree. I -- the specific thing cannot be lodged into evidence, shouldn't be mentioned that it was a deposition, shouldn't be mentioned that it was part of a civil suit, I suppose.

(ECF No. 92-35, p. 10-11). The Court thus only looks to violations of its protective order that were not otherwise allowed by the presiding judge in the criminal court, i.e., not including civil discovery used as impeachment when the document was not introduced as evidence.

First, the Court considers whether Plaintiff's counsel violated this Court's order by referencing the Internal Affairs investigation and employment status of Defendant Ceja during a motion *in limine* in the criminal case. During that motion, Huerta's defense counsel (Plaintiff's counsel this case) argued that "Officer Ceja [defendant in the civil case] in connection with a juvenile that he had handcuffed and then cracked across the face. And while they were investigated under IA, he resigned his position." (ECF No. 92-32, p. 2). Plaintiff's counsel first argued that this information came from *Brady* material produced in the criminal case. (Id.) ("And I -- and that was produced as part of the Brady documents."). In fact, the prosecution in the criminal trial later confirmed the *Brady* material did not include the fact that Mr. Ceja was terminated:

> I've reviewed the Brady disclosure that the People sent in either 2018 or 2019, and it categorically does not make any reference whatsoever to any termination proceedings. In fact, the evidence of those termination proceedings were derived, once again, from their civil discovery, and he's now intending to inject this into this case.

(ECF No. 94-34, p. 2). The *Brady* material did, however, include the police report related to Mr. Ceja's treatment of the juvenile.[6] (ECF No. 98-3, p. 11-38). The Court concludes that

---

[6]  The parties' briefs spend significant time discussing this police report regarding Defendant Ceja. Plaintiff claims that the police report should have been produced by Ms. Myers, as counsel to the third-party agency in control of the personnel records, to the criminal judge for *in camera* review during the *Pitchess* hearing. (ECF No. 98, p. 11-12). Instead, the report was later produced by the District Attorney as *Brady* material which the prosecution identified as potential "cause for the defense to make a disclosure motion under *Pitchess*." (ECF No. 110, p. 61).

Plaintiff counsel's reference to Mr. Ceja's Internal Affair's investigation and resignation was a violation of this Court's protective order, although reference to Mr. Ceja's conduct with the juvenile was not.

Second, the Court evaluates whether Plaintiff's counsel violated this Court's order by referencing certain 2016 internal policies and procedures document during the criminal case. During the questioning of Ronald Smith (Defendant in the civil action, and witness in the criminal trial), Plaintiff's counsel asked, "And the policy of the department with respect to body cams is they are to be on during all encounters with somebody that you're investigating, correct?" (ECF No. 99-1, p. 16). After the witness could not remember, Plaintiff's counsel read the policy into the record. (ECF No. 105-4, p. 5) (Mr. Treyzon: "This is a document that—for policy that was in effect on August 18th, 2016 . . . It says, prior to going into service, each uniform member will be responsible for making sure that he/she is equipped with a portable recorder issued by the department . . .").

At the hearing on this motion, Plaintiff's counsel stated that they had not violated the protective order because the policy that was used was publicly available, stating, "The document pertaining to the policies and procedures, which is the thing you are referring to, was a document that was publicly available, and the question was based upon a document that had been publicly available." [7] Later, Plaintiff's counsel conceded in supplemental briefing that his representation was not correct. (ECF 104, p. 3) ("The specific copy of the 2016 policies and procedures is not publicly available. Only the 2020 policies and procedures are publicly

---

Mr. Huerta's counsel, Mr. Owdom, believes that Ms. Myers wrongfully withheld the report from the criminal judge, and as a result, the report was not produced as *Pitchess* material. (ECF No. 110, p. 4). Mr. Owdom also claims that Ms. Myers had a duty to disclose the report directly to Mr. Huerta's criminal defense team. (Id.). Indeed, Plaintiff's counsel, Mr. Owdom, wrote to the Judicial Selection Advisory Committee considering Ms. Myers for judicial appointment to accuse Ms. Myers of unethical conduct related to this issue. (ECF No. 92-2, p. 22). Defendants contend that Mr. Ceja's personnel record was not subject to the criminal court's *in camera* review during the *Pitchess* hearing, and in any event, that Ms. Myers was not personally subject to a *Brady* disclosure obligation in the criminal case. (ECF No. 99, p. 5-6). Ms. Myers has requested sanctions in part due to Mr. Owdom's letter. (ECF No. 92-1, p. 37). Although the Court has reviewed the issue, it concludes that it is not properly before this Court. Any violations of the *Pitchess* process or *Brady* disclosure rules are subject for the criminal court.

[7] All quotations from the February 18, 2022 hearing are taken from the audio file of the proceeding, which is available to the parties upon request.

available."). The Court finds that the use of the 2016 policies and procedures violated the Court's protective order.

Third, Plaintiff's counsel referred to an internal confidential review form ("Exhibit BB") and introduced into evidence an internal briefing document ("Exhibit CC") during Mr. Smith's testimony. (ECF Nos. 104-3, p. 2-3; 105-5, p. 46-47). Plaintiff's counsel claimed that neither of the documents had been admitted into evidence, stating at the hearing, "[E]ven the use of deposition testimony, which was done by both the prosecutor as well as defense counsel—they were read from, they were not introduced into evidence." But that was incorrect as to Exhibit CC. The Court finds that introduction of Exhibit CC into evidence violated the protective order.

### 2. Ability to Comply

The Court next looks to whether Plaintiff's counsel has demonstrated that it was unable to comply with the protective order.

First, the Court finds no such inability to comply as to the reference to Mr. Ceja's resignation. Counsel for Mr. Huerta incorrectly stated that this information had been produced in the criminal case, but the produced document had not contained any information about Mr. Ceja's disposition as a result of the police report. Plaintiff's counsel gave no further explanation as to its failure to comply regarding reference to Mr. Ceja's resignation.

As for the use of earlier policies, Plaintiff provided a number of reasons for using the information, none of which were persuasive. At the hearing, Plaintiff's counsel first claimed that it did not know if the policies at issue were produced in the civil proceeding or not:

> **Mr. Rochen:** I do not have a personal recollection about which document was shown to the witness at the time of trial. Assume for the moment that it was the 2017 version, that was a document that would have been attached at—uh—to a deposition that was actually also included on the exhibit list by the prosecutor and it was used solely for purposes of refreshing recollection.

> **The Court:** I—I—I am still just kind of flabbergasted at you saying you're still not really sure. Maybe it was the document in civil litigation, maybe it wasn't. You really—you don't remember. That to me is either a lie or means you have not really tried to abide by the protective order at all. Because it's not a little

distinction. It's the distinction on whether you violated the protective order or not.

**Mr. Rochen:** Your honor, I don't want to disagree with you, and so that's the reason why I am trying to be political about it. It would be unfair for me to represent to you that it was not the 2017 version that I reviewed. It would equally be unfair for me to represent to you that it was a document that I obtained online that was publicly available.

**The Court:** No. It sounds like what you could represent to me is that you used the 2000—2017 document that was produced in the civil litigation. Isn't that right?

**Mr. Rochen:** I can't represent that you. I cannot.

After the Court reviewed the briefing and transcript exhibits, which appeared to show that counsel had referred to an earlier version of the policies and procedures, Plaintiff's counsel then claimed that the document had been used but had been taken from publicly available materials, rather than from the civil case:

**The Court:** Let me go back. Mr. Rochen, are you still claiming you didn't use them?

**Mr. Rochen:** Your honor, there—the—there is…go back to Exhibit M from Ms. Myers' declaration. What I had been referring to was from that because I didn't question Mr.—uh—Sergeant Smith.

**The Court:** Who did the questioning?

**Mr. Rochen:** Uh—Mr. Treyzon had questioned Sergeant Smith.

**The Court:** Oh. Then...[inaudible]...Mr. Treyzon, let me hear from you then. Did you use the 2017 policies?

**Mr. Treyzon: I used the 2017 policy, your honor. Not the one that was provided to us in the civil case. It's a publicly available document.**

**The Court:** Okay—so now we're—now at least we've got—you used 2017 policies, but you're saying you got it publicly?

**Mr. Treyzon:** Correct, your honor. And—and—and that's the crux of this issue. These are publicly available—they're posted…

**The Court:** But did you get it from the public? Let's be a little careful here. Did you get the documents from something publicly, or the civil litigation?

**Mr. Treyzon:** Your honor, **we did not use any documents from civil litigation. And I can say that for the rest of this hearing.**

**The Court:** So then answer my question—again—the 2017 policy and procedure that you used in questioning in Huerta's criminal trial—did you get that from a publicly available source?

**Mr. Treyzon:** I believe so, your honor. I am not the person who personally pulled it. It had no—my copy, that I looked at, had no restrictive—uh— watermark on it, it did not say the word confidential on it. So I am—even though I am not the one who pulled it, your honor, if it would have come from a civil case it would have had a restrictional legend on it. And we were very strict in preparing for this trial…

During the hearing, the Court repeatedly asked counsel to confirm where it had found the policies from a publicly available source, but counsel for Plaintiff could not locate such a document. In supplemental briefing, Plaintiff's counsel conceded that the policies and procedures were in fact from the civil case and had been used to question the witness, but argued that the policies used were "essentially the same" as the current publicly available policies and procedures. (ECF No. 104, p. 3). Given the inconsistent and incorrect explanations provided regarding use of this document, the Court finds that Plaintiff's counsel has not shown an inability to comply with the protective order.

As for Exhibit CC, Plaintiff's counsel initially denied that the document had been introduced as evidence:

**The Court:** Okay but—uh—but we—the issue though, was I thought we just read part of the [court record] that there should be no introduction of the document?

**Mr. Rochen: They were only marked.**

The Court questioned Plaintiff's counsel further about its compliance with the criminal court's instruction not to introduce the transcripts into evidence. Plaintiff's counsel stated unequivocally that no deposition transcripts were introduced into evidence:

**The Court:** Okay. So your contention is that you did use the document in the civil case, but it was marked, not introduced, and it was for the purpose of impeachment?

14

**Mr. Rochen:** My recollection is [inaudible]—but like I said, I did not examine the witness—is that they were marked. Any document that was used in the criminal trial had to be marked for the clerk, but not all documents were introduced. For example, even the use of deposition testimony, which was done by both the prosecutor as well as defense counsel—**they were read from, they were not introduced into evidence.**

This was shown to be incorrect as well. Exhibit CC was in fact introduced into evidence. (ECF No. 92-22, p.7). At the trial, the criminal court did state that the document was being admitted in part because "there are -- there -- inconsistencies in there under 1235 of the Penal Code." (ECF No. 105-5, p. 47). However, this appears to be a ruling related to the hearsay nature of the document, and not to whether it fell into an exception to the protective order, which again applied to impeachment documents *not* admitted into evidence. Thus, the Court finds Defendants have not met their burden of proving an inability to comply as to Exhibit CC either.

The Court next turns to the appropriate sanctions for these violations of the protective order.

## IV.    SANCTIONS

In considering the appropriate sanctions, the Court recognizes at the outset that the conduct underlying this sanctions motion is substantially different in degree than Plaintiff counsel's conduct addressed in the last motion. The last motion for contempt concerned Plaintiff's counsel submitting depositions from the civil case to the criminal court, quoting them at length, and arguing based on their conduct that the criminal case should be dismissed. (ECF No. 69, p. 5). It also concerned Plaintiff's counsel issuing subpoenas for Defendants' personnel records notwithstanding a stay of discovery as to those records, and then misrepresenting to the court that they were not aware of such subpoenas (which were in fact signed by the same Plaintiff's counsel). (Id. at p. 12). Given that conduct, the Court had no hesitation in finding Plaintiff's counsel in contempt.

Here, the Court has found three violations of the protective order. However, they each are relatively minor. This time, the criminal court was aware of the protective order and at least attempted to perform a gatekeeping role on this issue during the criminal trial. Although it is

true that counsel improperly referred to Mr. Ceja's resignation, the underlying conduct about Mr. Ceja had been produced in the criminal case and was the proper subject of questioning. Moreover, the reference to the resignation was made to the criminal judge, and not in front of the jury. As to the 2016 policies and procedures, although it is true that they were obtained from the civil case, it appears that they are similar to the current policies and procedures. Additionally, they were arguably used for refreshing the witnesses' recollection. Finally, the criminal judge found Exhibit CC to be impeachment and admitted the document, although it is not clear if the judge understood that this document came from the criminal case.

The Court is most troubled by Plaintiff counsel's conduct in connection with this motion for sanctions. In opposing the motion, Plaintiff's counsel made a number of misleading and incorrect statements. As discussed above, Plaintiff's counsel initially said that the statement about Defendant Ceja's resignation had been in the *Brady* material, but then had to concede that it was not. As for the 2016 policies and procedures, Plaintiff's counsel initially said that it did not know if the document had been produced in the civil case. Then, a different Plaintiff's counsel unequivocally represented that the 2016 policies and procedures were publicly available, but they were not. Plaintiff's counsel also told the Court had neither Exhibit BB or CC had been admitted into evidence, but CC was. These misstatements indicate that either Plaintiff's counsel intentionally misled the Court, or that counsel has been reckless and inattentive on whether use of certain documents violates the protective order.

With this in mind, the Court turns to the sanctions requested by Defendants, starting with Defendants' request that Plaintiff's case be dismissed with prejudice.

## A.  Terminating Sanctions

### 1.  Legal Standards

A court may issue terminating sanctions under its inherent power "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (internal citation omitted). Dismissal is a "harsh sanction" which should only be imposed as a remedy after considering the following factors: "(1) the public's interest in expeditious resolution of

16

litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of the case on their merits; and (5) the availability of less drastic sanctions." <u>Leon</u> at 958. Additionally, "a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper.'" <u>Id.</u> Terminating sanctions under Rule 37(b) are warranted under the same five-factor test. <u>See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007).

### 2. Analysis

First, the public's interest in expeditious resolution of litigation does not warrant terminating sanctions here because there has not been substantial delay due to the violations of the protective order. Although the stay was in place due to an earlier finding of contempt, there has not been further delay due to the violations of the protective order at issue in this motion.

Second, and for similar reasons, the Court's need to manage its docket does not favor termination.

Third, the Court finds little prejudice to the individual Defendants (in contrast to Defense counsel). Although some individual defendants served as witnesses at the criminal trial, they were not on trial. They were merely witnesses in a criminal prosecution by the state. Additionally, the Court does not find that they have been prejudiced in this civil case. To the extent anyone has been prejudiced, it is arguably the District Attorney, who is not a party to this case. Defendants' argument that the use of the civil deposition transcripts only served to confuse the jury in the criminal trial, which resulted in a hung verdict thereby limiting the availability of a *Heck* bar defense in the civil trial, is too attenuated to amount to prejudice to the Defendants. While the Court does find prejudice to Defense counsel insofar as counsel expended time and money to bring the violations to the attention of this Court, this issue can be addressed through monetary sanctions, discussed further below.

Fourth, when considering the public policy favoring disposition of cases on their merits, dismissal is not warranted because the alleged constitutional violations in the civil case implicate important public concerns. <u>See Dahl v. City of Huntington Beach</u>, 84 F.3d 363, 366 (9th Cir. 1996) (terminating sanctions not warranted because "underlying claim of police

brutality" implicated important policy interest to see such a case decided on the merits); Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998) ("[R]esolution on the merits 'is particularly important in civil rights cases.'") (internal citation omitted).

Fifth, when considering the availability of less drastic sanctions, the Court finds that monetary sanctions are sufficient to address the issue. While the Court is aware that it already issued monetary sanctions against Plaintiff's counsel for violations of the same order, counsel's conduct did change following that order. Additionally, dismissal would punish the Plaintiff, Mr. Huerta. The Court has seen no indication that Mr. Huerta was involved in the use of the evidence discussed above. Indeed, Defense counsel never mentions Mr. Huerta himself in the motion for sanctions. Accordingly, dismissal of Plaintiff's claim would be too severe a sanction, whereas monetary sanctions against Plaintiff's counsel can adequately address the issues. See Dahl, 84 F.3d at 365 (reversing district court's terminating action because "outright dismissal penalize[ed] [Plaintiffs] for their counsels' bad behavior")

The Court thus declines to dismiss the case. However, because Plaintiff's counsel violated the protective order, which necessitated expenses and fees from Defendants' counsel, the Court finds that some compensatory sanctions are warranted.[8]

**B. Compensatory Sanctions**

**1. Legal Standards**

A court may exercise its inherent power to punish civil contempt. Chambers v. N.A.S.C.O., Inc., 501 U.S. 32, 44 (1991) (sanctions may be imposed for "bad faith" conduct or for "willful disobedience" of a court order). Sanctions are available to "compensate the contemnor's adversary for the injuries which result from the noncompliance." See In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1366 (9th Cir. 1987). A compensatory award to the opposing party is limited by actual loss. America Unites for Kids v. Rousseau, 985 F.3d 1075,

---

[8] Defendants also requested this Court to issue a disciplinary referral to the State Bar based on alleged professional misconduct by Mr. Owdom not related to the protective order. (ECF No. 92-1, p. 38). For the reasons stated on the record, the Court declines to take such action largely because the alleged misconduct is beyond the scope of this civil action and the protective order. However, the Court confirms the agreement reached on the record that going forward Plaintiff's counsel, Mr. Owdom, will communicate to Defendants' counsel through Abir Cohen Treyzon Salo, LLP ("ACTS law firm").

1089-90 (9th Cir. 2021) ("[A] district court acting under its inherent authority to impose compensatory sanctions must apply a 'but-for' causation standard.") (citing Goodyear Tire & Rubber Co. v. Hager, 137 S.Ct. 1178, 1187 (2017)). Actual loss includes "the cost of bringing the violation to the attention of the court." Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 958 (9th Cir. 2014) (internal citations omitted); see also Goodyear at 1186 (attorney's fee award is correctly calibrated to address actual damage "if it covers the legal bills that the litigation abuse occasioned" but not "fees that would have been incurred without the misconduct.").

A court may also issue compensatory sanctions under Rule 37(b) "[i]f a party…fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); see also David v. Hooker, Ltd., 560 F.2d 412, 417 (9th Cir. 1977) ("An order to pay attorney's fees and expenses under Rule 37(b)(2) is similar in both its purpose and effect to fines imposed for civil contempt which are made payable to an opponent to compensate the latter for loss sustained as a result of the contemnor's conduct."). Rule 37(b) sanctions apply to all discovery related orders. See Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1222 (9th Cir. 2018). Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the [other available sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." An award of attorney's fees and costs must be traceable to time and resources spent bringing a motion to enforce the discovery order and those "incurred on account of [the adverse party's] failure to obey." Liew v. Breen, 640 F.2d 1046, 1051 (9th Cir. 1981).

In general, a compensatory civil contempt fee award should also be supported by a reasonableness finding. See Perry v. O'Donnell, 759 F.2d 702, 706 (9th Cir. 1985). The Ninth Circuit has established a two-step process to use when calculating a reasonable fee award. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (internal citations omitted). First, the district court calculates the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Id. The reasonable

hourly rate is determined by "the experience, skill, and reputation of the attorney requesting fees." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). Any hours which are "excessive, redundant, or otherwise unnecessary" are excluded. Id. Second, the district court adjusts the lodestar figure upward or downward based on an evaluation of the relevant *Kerr* factors not already subsumed in the lodestar calculation. Fischer at 1119.

### 2. Analysis

In awarding monetary sanctions, the Court relies both on its inherent authority to compensate litigation costs caused by a party's contempt, and its authority under Rule 37(b) to award attorneys' fees and costs traceable to efforts expended in bringing a motion to enforce a discovery order.

The Court will apply the "but-for" test to determine which requested attorneys' fees and costs were caused by Plaintiff counsel's violation of the protective order. Here, the attorney and paralegal fees associated with bringing the motion for contempt would not have occurred had Plaintiff's counsel not violated the protective order. The same goes for communication costs associated with investigating Plaintiff counsel's conduct during the criminal trial.

However, the Court does not find the 118.8 hours expended in bringing the contempt motion entirely reasonable. Defense counsel has filed unnecessarily oversized briefs with many hundreds of pages of exhibits. The briefing on the request for sanctions is greater in scope and length than what was needed to address the issue. Many of the issues raised in Defendants' papers, including whether there was a *Brady* violation in the criminal case and the alleged improper service of subpoenas during the criminal trial, are not properly before the Court. For those reasons, the Court exercises its discretion to reduce the costs associated with bringing the motion for contempt by fifty percent. See Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992) ("[A] district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure...").

Additionally, while the Court recognizes the criminal trial transcripts were expedited for use in bringing the contempt motion, it seems likely that defense counsel would have ordered the criminal trial transcripts in any event given the connection to the pending civil case.

Moreover, it was not necessary to see the entirety of the trial transcripts to rule on this motion.
For that reason, the Court has determined that only a third of the transcription costs should be
included when calculating the lodestar figure.

As for Defense counsel's costs in attending the criminal trial, it cannot be said that, but
for the violations which occurred at the criminal trial, Defense counsel would not have attended
the criminal trial. The Court is not convinced Defense counsel needed to be present at the trial
purely to police the protective order. After all, the prosecution was aware of the order and the
production in the criminal case and could have alerted Defense counsel to any such use.
Additionally, the Court will not include costs associated with the state court motions to quash
or the October 8, 2022 informal discovery conference. This Court did not find the subpoenas at
issue in those motions as violative of the protective order, and the informal discovery
conference took place prior to the criminal trial where the protective order violations occurred.

After applying these reductions[9], the lodestar figure is calculated as follows:

| | |
|---|---|
| Paralegal communication (5.3 hours) | $227.90[10] |
| Paralegal contempt motion (12 hours— *reduced by 50%*) | $258.00 |
| Attorney communication (3 hours) | $330.00 |
| Attorney contempt motion (106.8 hours— *reduced by 50%*) | $5,874.00 |
| Criminal trial transcription (*reduced to one-third*) | $4993.33 |
| Lodestar Figure: | **$11,683.23** |

[9] As set forth in the itemization, the total paralegal cost in bringing the contempt motion was $516.00. (ECF No. 105-1, p. 4). The total attorney cost in bringing the contempt motion was $11,748.00. (Id. at p. 5). The total cost of the criminal trial transcripts was $14,980.00. (Id. at p. 3).
[10] While Ms. Myer's costs associated with the informal discovery dispute conference were itemized under costs in bringing the state court motions to quash, Defense counsel's paralegal costs associated with the conference were included in the itemization for paralegal assistance in communications. Given the negligible amount, the Court does not request further itemization.

The Court does not find an upward or downward adjustment is necessary when considering the relevant *Kerr* factors. See Cairns v. Franklin Mint. Co, 292 F.3d 1139, 1158 (9th Cir. 2002) (quoting Kessler v. Associates Fin. Servs. Co. of Hawaii, 639 F.2d 498, 500 n.1 (9th Cir. 1981)) (A district court need only to consider the factors "called into question by the case at hand and necessary to support the reasonableness of the fee award."). Here, the relevant *Kerr* factors not considered in the lodestar calculation include "the novelty and difficulty of the questions involved…time limitations imposed by the client or the circumstances…and awards in similar cases." Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).[11] The contempt motion did not raise difficult or novel questions, and the matter was not time-sensitive once the criminal case was closed. The amount awarded is also commensurate to attorneys' fees and costs awarded in similar cases in the Eastern District. See Gen. Teamster Local #439 v. Leprino Foods Co., 2022 WL 891278 at *2 (E.D. Cal. March 25, 2022) (costs and fees requested in successful Rule 11 motion reduced by over fifty percent to $12,037); Mkrtchyan v. Sacramento Cty., 2022 WL 105110 at *1, 5 (E.D. Cal. January 11, 2022) (requested sanctions reduced by twenty percent to $15,459.80).

For those reasons, the Court awards monetary sanctions in the amount of $11,683.23 to Defendants.

## V.    PLAINTIFF'S REQUEST FOR RULE 11 SANCTIONS

The Court denies Plaintiff's request for Rule 11 Sanctions against Defendants. Plaintiff asserts such drastic sanctions are warranted because "Defendants' most recent motion for contempt is [] frivolous, unsupported and intended solely to inflame and mislead the Court." (ECF No. 98, p. 40). Plaintiff claims Defense counsel improperly brought the motion for contempt to "air[] her grievances" and stall the case. (Id. at p. 40-41).

---

[11] The Court does not find certain *Kerr* factors called into question such as "the preclusion of other employment by the attorney due to the acceptance of the case" or "the 'undesirability' of the case" or "the nature and length of the professional relationship with the client" given Defense counsel's employment as county counsel. See Kerr at 70. Additionally, the Court does not consider "the amount involved and the results obtained" as the requested attorney's fees and costs are not related to a final disposition. Id.w

Rule 11 sanctions are warranted against a party when the attorney of record signs a "pleading, written motion, or other paper," that is not well grounded in fact, warranted by existing law, made in good faith, or otherwise brought for any improper purpose. Christian v. Mattel, Inc., 286 F.3d 1118, 1131 (9th Cir. 2002). "A motion is factually frivolous if 'a competent attorney, after reasonable inquiry, could not form a reasonable belief that the [motion] was well founded in fact.'" Masionville v. F2 America, Inc., 902 F.2d 746, 748 (9th Cir. 1990) (sanctions warranted for factually deficient motion which was based on the party's claim they were not notified of a status conference the party themselves had attempted to cancel). A motion is brought for improper purposes when it is meant "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Cervantes Orchards & Vineyards, LLC v. Deere & Co., 731 Fed.Appx. 570 (9th Cir. 2017) (citing Fed. R. Civ. P. 11(b)(1)).

Plaintiff's request fails to identify any clear misconduct by defense counsel warranting Rule 11 sanctions. First, Plaintiff claims Ms. Myer's attendance and participation during the criminal trial was abusive. (ECF No. 98, p. 41). But, the criminal trial was a public proceeding and Defense counsel was permitted to attend. Moreover, it did result in the discovery of certain violations, as discussed above. Plaintiff's request for rule 11 sanctions on this basis is frivolous.

Second, Plaintiff claims Defendants' motion "was not based on facts and should never have been brought before the Court." (ECF No. 98, p. 42). Yet the very facts offered by Plaintiff to demonstrate that the contempt motion was brought without merit were disputed by Defendants and later proven false—for instance, Plaintiff repeated the claim the 2016 policies and procedures were "readily available online." (Id.)

Finally, Plaintiff claims Defendants' allegations of improper service and harassment by Mr. Owdom were "frivolous issues." (ECF No. 98, p. 42). While the Court declined to address those allegations because they were beyond the scope of the protective order, the Court recognizes Defendants raised the allegations as support for their argument that Plaintiff counsel's conduct amounted to bad faith. Given the previous contempt finding, the Court does not find the very fact Defense counsel offered certain facts in support of a legal argument for

bad faith so egregious as to warrant Rule 11 sanctions. <u>See</u> <u>United Nat. Ins. Co. v. R&D Latex Corp.</u>, 242 F.3d 1102, 1115 (sanctions should be imposed on counsel "only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients.").

## VII.   ORDER

1. Defendants' Motion for Contempt and Sanctions (ECF No. 92-2) is GRANTED in part and DENIED in part. The Court finds Plaintiff in civil contempt of this Court's protective order set forth in the Court's minute order (ECF No. 36).

2. Plaintiff's counsel shall pay Defendants $11,683.23.  Payment should be made within 30 days of the date of this order.

3. Defendants' Request for Judicial notice is GRANTED.

4. Plaintiff's Request for Rule 11 Sanctions is DENIED.

IT IS SO ORDERED.

Dated:   **April 12, 2022**                    /s/ *Erica P. Grosjean*

                                      UNITED STATES MAGISTRATE JUDGE